UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANDREA M. CALABRESE,

                    Plaintiff,                    09-CV-581

          v.                                      **DECISION**
                                                  **and ORDER**

MICHAEL J. ASTRUE,
Commissioner of Social Security

                    Defendant.

_____

## Introduction

     Plaintiff, Andrea Calabrese ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("Commissioner"), denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  Specifically, Plaintiff requests that this Court give greater weight to certain medical evidence.

     Commissioner moves for judgment on the pleadings affirming the final decision denying Plaintiff DIB and SSI.  For the reasons set forth herein, the final decision of the Commissioner is affirmed. Commissioner's motion for judgment on the pleadings is granted and Plaintiff's motion for judgment on the pleadings is denied.

## Background

     Plaintiff filed for DIB and SSI on June 19, 2006 with an alleged onset date of June 18, 2005. (Tr. 81).[1]  The Social

_____

[1]"Tr." refers to the transcript of the administrative record.

Security Administration ("SSA") denied Plaintiff's application on November 2, 2006. (Tr. 64-65).   Thereafter, Plaintiff, with her attorney, Albert Rottaris, Esq., attended an administrative hearing in front of ALJ Lamar W. Davis ("ALJ") on November 19, 2008. (Tr. 523).   The ALJ found that was not disabled within the meaning of the Act in his January 15, 2009 decision. (Tr. 8-19).   On April 24, 2009, the Appeals Council declined to review the ALJ's decision, which became the final decision of the Commissioner. (Tr. 2-4).   This action followed.

## Discussion

### I. Jurisdiction and Scope of Review

Title 42, Section 405(g) of the United States Code grants this Court the power to review the decision of the Commissioner and, if appropriate, remand the matter for further proceedings. See Mathews v. Eldridge, 424 U.S. 319, 320, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Section 405(g) additionally directs this Court to accept the Commissioner's findings of fact so long as they are supported by substantial evidence in the record.  See Bubnis v. Apfel, 150 F.3d 177, 181 (2d Cir. 1998); see also Williams v. Comm'r of Soc. Sec., 2007 U.S.App. LEXIS 9396 at *3 (2d Cir. 2007).   "Substantial evidence" is defined as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 217 (1938).   The Court must "scrutinize the record in its entirety to determine the

reasonableness of the decision reached." <u>Lynn v. Schweiker</u>, 565 F.Supp. 265, 267 (S.D.Tex. 1983) (citation omitted). Section 405(g) thus limits the Court's review to two inquiries: (1) whether the Commissioner's decision was supported by substantial evidence in the record and, (2) whether the Commissioner's decision was based upon an erroneous legal standard. <u>See</u> <u>Green-Younger v. Barnhart</u>, 335 F.3d 99, 105-06 (2d Cir. 2003). Under section 405(g), this Court's review of the Commissioner's decision is not *de novo*, and is limited to an inquiry as to whether the Commissioner's decision was supported by substantial evidence. <u>See</u> <u>Wagner v. Secretary of Health & Human Serv.</u>, 906 F.2d 856, 860 (2d Cir. 1990).

Both Plaintiff and Commissioner move for judgment on the pleadings pursuant to 42 U.S.C. § 405(g) and Rule 12(c) of the Federal Rules of Civil Procedure. Section 405(g) states that, "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Under Rule 12(c), "[j]udgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." <u>See Sellers v. M.C. Floor Crafters, Inc.</u>, 842 F.2d 639, 642 (2d Cir. 1988) (citing <u>National Fidelity Life Ins. Co. v. Karaganis</u>, 811 F.2d 357,

358 (7th Cir. 1987)).   Remand to the Commissioner for further

development of the evidence is warranted when the record contains

gaps which render the final decision of the Commissioner

inappropriate. See Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir.

2005).

## II. **The Commissioner's decision to deny the Plaintiff benefits was supported by substantial evidence in the record.**

In his decision, the ALJ adhered to the Social Security

Administration's five step analysis which includes:

(1) considering Plaintiff's work activity during the relevant period.  If Plaintiff was engaged in substantial gainful work during the relevant period, Plaintiff is not disabled.

(2) If Plaintiff is not currently doing substantial gainful work, the ALJ considers whether Plaintiff has a severe medically-determinable physical or mental impairment that may result in death or is expected to last or has lasted for a period of 12 months or more ("the duration requirement"), or whether Plaintiff has a combination of impairments which meet this standard.

(3) If not, the ALJ examines whether the severity of the medical impairment meets or equals one of the listings in Appendix 1 of Subpart P and whether it meets the duration requirement.  If so, the ALJ will find that Plaintiff is disabled.

(4) If not, the ALJ will consider Plaintiff's residual functioning capacity and past relevant work.   If Plaintiff can still do his or her past relevant work, Plaintiff is not disabled.

(5) If not, the ALJ will consider Plaintiff's residual functioning capacity, age, education, and work experience to see if Plaintiff can make an adjustment to other work in the National economy.  If the ALJ finds that Plaintiff can make such an adjustment, the ALJ will conclude that Plaintiff is not disabled.   If the ALJ finds that

Plaintiff cannot make such an adjustment, the ALJ will conclude that Plaintiff is disabled.

20 C.F.R. 404.1520(a)(4)(i)-(v) and 419.920(a)(4)(i)-(v) (2009).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of June 18, 2005. (Tr. 13). At step two, the ALJ found that Plaintiff had the following severe impairments: "[O]steoarthritis (back and neck pain), fatigue (sleep apnea), CTS, adjustment disorder, asthma, and fibromyalgia." (Tr. 14). At step three, the ALJ found that Plaintiff's impairments or combination of impairments do not meet or medically equal the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (Tr. 14). Under step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to complete light work as defined by Title 20 of the Code of Federal Regulations, section 404.1567(b) with some limitations, but that this RFC renders Plaintiff unable to perform her past relevant work as a teacher, book clerk, and sales clerk. (Tr. 17). At step five, the ALJ, after consulting a vocational expert, concluded that given her RFC, age, work experience and education, Plaintiff had the ability to perform work that exists in substantial numbers in the national economy. (Tr. 18). Thus, the ALJ concluded that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act. (Tr. 19). This Court finds that the ALJ's decision was supported by substantial evidence in the record.

At the time of her alleged onset of disability, Plaintiff was employed as a substitute teacher 4-5 days per week working 8-hour days.  She also worked as a retail sales associate at Michael's Arts and Crafts ("Michael's") for 5-20 hours per week. (Plaintiff's Brief at 7).  Plaintiff suffered a lumbar back spasm on June 18, 2005, her alleged disability onset date. Id. at 8.  Michael's was unable to accommodate Plaintiff's restrictions, and she then substitute taught 2-3 days per week, some of which were half days. Id.

Plaintiff testified that she continued to work although she alleges total disability beginning on June 18, 2005. (Tr. 529). Plaintiff testified that she substitute taught from September of 2006 to the end of January 2007 for between 20 and 30 hours per week. (Tr. 529).  In a December 13, 2007 report, Plaintiff stated that her daily activities included reading, playing games, checking email, watching movies, talking on the phone with friends and family, visiting with neighbors and assisting her elderly aunt who lives nearby with mail, groceries and obtaining social services. (Tr. 101-12).  On February 14, 2007, Plaintiff filled out and signed a work background form where she provided that she was currently a substitute teacher for five different school districts. (Tr. 363-64).

On September 29, 2005, Dr. Ghulam S. Masoodi, Plaintiff's Primary Care Physician ("PCP"), signed an employability assessment

form, which provided that "[patient] is totally disabled due to lumbar disc disease." (Tr. 469).  On June 21, 2006, Dr. Pawlowski filled out an employability assessment form stating that Plaintiff was "totally disabled due to disc disease." (Tr. 467).  Plaintiff further alleged a disability due to depression. (Tr. 375).

On February 3, 2007, Dr. David Pawlowski recommended that Plaintiff not work from February 7 to 21. (Tr. 234).  On February 26, 2007, Dr. Pawlowski saw Plaintiff again, extended the time period during which he recommended that she not work to March 7, 2007, and reported that Plaintiff felt that she could not work yet, but did desire to go back to work sooner than he recommended. (Tr. 233).  On March 7, Dr. Pawlowski re-examined Plaintiff, extended the off-work period for two more weeks, and stated "per her, she cannot work." (Tr. 232).  On March 21, 2007, Dr. Pawlowski again examined Plaintiff and recommended that she continue to not work until May 1. (Tr. 231).

Sports Medicine specialist, Dr. Tahir Qazi examined Plaintiff on November 13, 2008, and opined that Plaintiff could sit continuously for 20 minutes, stand continuously for 10 minutes, walk continuously for 15 minutes and lie down continuously for two hours, although he did not provide an opinion on the total amount of time Plaintiff could do any of the same activities. (Tr. 192).

Vocational expert ("VE") James A. Phillips, testified at the November 19, 2008 hearing. (Tr. 539).   The ALJ provided the following hypothetical to the VE to consider:

> An [i]ndividual of the same age, educational background, and vocational history depicted in this record, which individual is capable of no more than light exertional activity, and is limited to no more than a postural adaptation, which is defined in our regulations as stoop, kneel, crouch, balance, or climb on scaffolding.  And incidental being defined at all times herein as totaling up to but not exceeding one-sixth of a routine eight hour work day with no exposure to hazards such as unprotected heights and dangerous machinery, and no exposure to environmental factors such as temperature extremes, excessive humidity, fumes, dust, and airborne particulants.  The temperature extremes would be defined as less than 40 degrees Fahrenheit and more than 90 degrees Fahrenheit on a continuing basis, and excessive humidity would be defined as more than 90 percent on a continuing basis while all at the same time being relegated and restricted to simple routine repetitive tasks involving, again, no more than an incidental change in work processes, and no interaction with the general public.

(Tr. 539-40).

The vocational expert stated that none of the skills acquired in Plaintiff's past relevant work would be transferable to new work for which Plaintiff would be suitable. (Tr. 540).  The vocational expert stated that if Plaintiff did in fact need to take fifteen minute breaks every hour, she would be considered disabled. (Tr. 542).

Plaintiff alleges many disabling issues were caused by her chronic medical conditions.  She alleges that without a severe increase in pain and fatigue, she is unable to walk more than 25 feet, stand more than 5 minutes, sit more than 20 minutes, lift

or carry more than 5 pounds, climb stairs, reach, push or pull. Plaintiff further alleges that she experiences severe difficulty getting in and out of the car, driving, rising from a seat, getting down to or up off of the floor and with simple daily tasks. Plaintiff also alleges numbness, extreme fatigue and difficulty concentrating. (Plaintiff's brief at 8-9).

## A. The ALJ properly weighed the medical opinions of Drs. Pawlowski and Qazi.

Plaintiff contends that Dr. Pawlowski's findings supported the conclusion that she was disabled and that his treatment notes stating that she was a difficult patient were retaliatory in nature. Although Dr. Pawlowski recommended that Plaintiff not work for the period of time between February 7 and May 1, his medical records and physician's notes did not support a finding that she was not disabled within the meaning of the Act. In a June 21, 2006 note he stated that, "[s]he is a very difficult patient, sarcastic, on disability due to apparent back pain. I have no records to [corroborate] this." (Tr. 239). On that same date, Dr. Pawlowski also checked the "not disabled" box on a Verification of Disability/Handicapped Status form. (Tr. 465). On February 3, 2007 in the same report in which he recommended that Plaintiff not work until February 21, Dr. Pawlowski noted that "[s]he tends to exaggerate her symptoms by laughing." (Tr. 234). On March 7, Dr. Pawlowski stated "per her, she cannot work." (Tr. 232). On March 21, 2007, Dr. Pawlowski noted in his report that Plaintiff

9

made snide comments during the examination and was "very dramatic."
(Tr. 231).  During the May 1 examination, Dr. Pawlowski again noted
that Plaintiff made odd jokes, was very dramatic, and emphasized
how difficult it was to move around. (Tr. 230).

     The ALJ properly found that Dr. Pawlowski's recommendation
that Plaintiff could not work did not equate to a finding of
disability.  Further, the ALJ properly declined to give
Dr. Pawlowski's opinion controlling weight.  Dr. Pawlowski's
assessment that Plaintiff came into each evaluation with a negative
attitude accompanied by exaggeration of her alleged disabilities
was corroborated by another doctor's almost identical observations.
(Tr. 402-07).  On September 14, 2006, internal medicine specialist
Dr. Nikita Dave examined Plaintiff and noted among other things
that Plaintiff appeared to be in no acute distress, used no
assistive devices and put in "exceedingly poor effort" during the
examination. (Tr. 405).

     The opinion of a treating physician is given controlling
weight as long as it is supported by substantial evidence in the
record and is not inconsistent with other evidence.  See 20 C.F.R.
404.1527(d)(2). However, the ALJ does not have to give controlling
weight to the physician's opinion if it is inconsistent with
medical evidence and clinical findings in the record. See Wavercak
v. Astrue, 2011 U.S. App. LEXIS 8459, at *5 (2d Cir. N.Y. Apr. 25,
2011).  Dr. Pawlowski's employability assessment on June 21, 2006
and his recommendations that Plaintiff not work from February 7 to

May 1, 2007 were correctly not given controlling weight.  There was insufficient objective medical findings in the record to support Plaintiff's disability.   Additionally,   there   was   inconsistent evidence in Dr. Pawlowski's own treatment notes, which stated that Plaintiff was not disabled and that she exaggerated her symptoms. (Tr. 230-47, 465).

Yakov Burstein, Ph.D. evaluated Plaintiff's mental state on October 24, 2006. (Tr. 375).  Dr. Burstein opined that Plaintiff's symptoms were not significantly limiting. Id.  On October 31, 2006, disability analyst, Patrict Didas, found that Plaintiff had the RFC consistent with light work. (Tr. 391-96).

Dr. Qazi's evaluation also does not support Plaintiff's claim for disability.  Dr. Qazi fails to provide the total amount of time Plaintiff can sit, stand, walk, or lie down. (Tr. 192).  His assessment states that Plaintiff can frequently lift up to 10 pounds, occasionally lift up to 20 pounds, and can use her hands and arms on a repetitive basis to a limited degree. Id.  Such findings are not evidence of an individual who is "totally disabled" and Dr. Qazi states merely that Plaintiff is "very limited." (Tr. 193).

Although Plaintiff argues that Dr. Ghulam Masoodi, her PCP prior to Dr. Pawlowsk, had diagnosed her with many conditions since 1993 and up through 2006, there is only one document in the record from Dr. Masoodi stating "[P]t is totally disabled due to lumbar

11

disc disease." (Tr. 469).  But there are no treatment notes or other evidence from Dr. Masoodi to support this opinion.

## B. The ALJ properly discounted the credibility of Plaintiff's testimony

Plaintiff testified that her hands function poorly, that she is exhausted all the time, that she has trouble walking for more than five minutes and her PCP's comments about her being a difficult patient were unfounded. (Tr. 534-35, 537-38).  Given her daily activities, her unprofound sleep study results,[2] Dr. Yakov Burstein's evaluation that Plaintiff's symptoms of depression were not significantly limiting and Dr. Nikita Dave's and Dr. Pawlowski's shared observation that Plaintiff was a difficult patient who tended to exaggerate her symptoms, the ALJ properly concluded that Plaintiff's testimony regarding her disability was not deserving of substantial credibility. (Tr. 234, 239, 375, 404-05, 490).

Ultimately, this Court finds that the evidence does not support Plaintiff's subjective complaints and allegations of a disabling condition.  The only evidence in the record of her disability is Dr. Pawlowski's recommendation that she not work. The ALJ properly gave little weight to this because Dr. Pawlowski's medical findings and treatment notes were inconsistent with his off-work recommendation and indicated that he did not opine that

---

[2]Plaintiff underwent a sleep study on August 28, 2005 where the doctor recommended a nasal mask, weight reduction, positional therapy and no alcohol or caffeine intake after noon. (Tr. 490).

she was disabled.  Her testimony was found to be not credible given the lack of medical evidence supporting her claims of disability and her reportedly bad attitude during medical examinations.  The ALJ gave proper weight to the medical opinions that Plaintiff was not disabled because they were consistent with objective clinical evidence in the record.

## Conclusion

For the reasons set forth above, the Court finds that the Commissioner's decision to deny the Plaintiff benefits was supported by substantial evidence in the record.  I therefore grant Commissioner's motion for judgement on the pleadings and dismiss Plaintiff's complaint with prejudice.


**ALL OF THE ABOVE IS SO ORDERED.**

s/Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

DATED: June 28, 2011
       Rochester, New York